Sanford Ralph ABRAMSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19936.

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1964.

Harry T. Gray, Jacksonville, Fla., for appellant.

Edmond J. Gong, Lloyd G. Bates, Jr., Asst. U. S. Attys., Miami, Fla., for appellee.

Before RIVES, CAMERON and HAYS,* Circuit Judges.

CAMERON, Circuit Judge.

Appellant was convicted of violating a section of the narcotic laws, 26 U.S.C. § 4742(a). He raises many objections on appeal, the principal one being that he was not given access to certain statements to which he claimed he was entitled under the Jencks Act.[1]

---

\* Of the Second Circuit, sitting by designation.

1. 18 U.S.C.A. § 3500:

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. * * *

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court

**566**

An understanding of the "statements" here involved and of the circumstances of their handling by the court below will show that the error complained of is without merit on several grounds.

Five agents of the Narcotics Department of the State of Florida had collaborated in making the cases against the appellant. Agents Sanchez and Bellinger collaborated in dictating a résumé of what transpired in the contacts of all of the agents with the appellant and with other aspects of the case against him. The other three agents, it finally developed from all of the testimony, had not participated in the making of that report and had made no memorandum at all of their contacts with the several offenses or any facts connected therewith.

Agent Bellinger first testified that he had made a statement and had used it to refresh his collection a day or two before the trial. Later, upon consulting the file and upon cross-examination, he stated that he was mistaken in what he had testified and he stated that the memorandum he had used to refresh his recollection was the one made by Agents Sanchez and Bellinger and signed by Agent Sanchez alone. The other agents had also read the Sanchez report at times ranging from one day to a week before the trial.

The Government's evidence shows that the defendant sold quantities of marihuana to a state inspector on February 21 and March 6, 1961. He was arrested at his home in Terrine, Florida without a warrant on March 21, 1961. The defendant was arrested by state authorities as the result of their investigation, but the case was later taken over by federal authorities, resulting in this prosecution. At the time of his arrest he was advised of his constitutional right to remain silent, but he nevertheless admitted the sales forming the basis of this prosecution. A search of the house, consented to by the defendant, revealed no hidden narcotics. The defendant testified in his own behalf denying both sales.

■ From the foregoing it is extremely doubtful if the Sanchez report comes within this definition of statement, Note 1, supra. Badon v. United States, 5 Cir., 1959, 269 F.2d 75; Tillman v. United States, 5 Cir., 1959, 268 F.2d 422. And cf. Goldman v. United States, 1932, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322.

More than that, the entire Sanchez report was turned over to appellant's attorney, together with other material which was not asked for specifically. Confusion arose when the appellant's attorney was cross-examining the several agents, and they left the impression that each of them had made a separate statement or report. Further questioning of the witnesses by the court and counsel, however, showed clearly that the file had never contained any report except the one prepared and signed by Sanchez with the collaboration he had received from Bellinger.

The court, out of abundance of caution, suggested that the United States Attorney absent himself from the courtroom and make a close examination of the state's file to ascertain if any statements or reports by the agents who had testified could be found in that file. The attorney came back and reported that there were no other statements except the ones which had been turned over to appellant. The court was satisfied with

shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statements which do not relate to the subject matter of the testimony of the witness. * * *

"(e) The term 'statement,' as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or
(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

that statement of counsel, and the attorney for the appellant not only made no objection to that manner of handling the matter, but acquiesced in the course taken. It is plain, therefore, from the authorities mentioned supra that this specification of error is without merit.

The other errors assigned are equally without merit. They will be referred to briefly.

■ The appellant claims that the indictment was not signed by the United States Attorney for the district, according to Federal Rules of Criminal Procedure, 7(c). Admittedly, the indictment was signed by the Assistant United States Attorney but, in any event, this shows no prejudice. "[T]echnical objections to indictment are not valid where the elements of the offense are clearly set forth." United States v. Shavin, 7 Cir., 1961, 287 F.2d 647, 90 A.L.R.2d 888. Appellant charges that, in addition to citing 26 U.S.C. § 4742(a), the indictment erroneously cited 26 U.S.C. § 7237(a). This citation was correctly treated by the trial court as harmless surplusage. F.R.Cr.P. 7(c) provides: "Error in the citation or its omission shall not be grounds for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." Certainly no prejudice has been shown here. Although the delivery of the narcotics by the agents to the government chemist was not authenticated by a receipt, the chain of possession was adequately established by the evidence.

■■ Appellant contends that his arrest and search pursuant thereto was without a warrant and, therefore, unlawful. The arrest was made two weeks after the last transaction by an officer with personal knowledge of appellant's activities. Arrests without warrant are authorized in narcotics cases,[2] even if made some two weeks after the last offense. Dailey v. United States, 5 Cir., 1958, 261 F.2d 870, certiorari denied,

359 U.S. 969, 79 S.Ct. 881, 3 L.Ed.2d 836. The record amply refutes the contention that there was insufficient evidence as to violations of the narcotics laws.

The court-appointed counsel appearing before us has worked diligently in the preparation of this case and has been of real aid to us in understanding the points relied upon by the appellant for reversal. He has raised every point possibly available in the record, and we have considered each of them carefully and hold that no reversible error was committed.

The judgment appealed from is, therefore,

Affirmed.