**In the Matter of the Petition of Dale Percy for a Writ of Habeas Corpus.**

**Dale PERCY, Appellant,**

v.

**STATE OF SOUTH DAKOTA, Appellee.**

**No. 19672.**

United States Court of Appeals, Eighth Circuit.

June 4, 1971.

Heaney, Circuit Judge, dissented and filed opinion.

Timothy J. Nimick, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., on brief for appellant.

Gordon Mydland, Atty. Gen., and Edward M. Blando, Asst. Atty. Gen., Pierre, S. D., on brief for appellee.

Before MATTHES, Chief Judge, VAN OOSTERHOUT and HEANEY, Circuit Judges.

MATTHES, Chief Judge.

This is an appeal from an order of the United States Court for the District of South Dakota denying appellant's petition for a writ of habeas corpus under

28 U.S.C. § 2254. Appellant was convicted of indecent molestation of a five year old child in violation of S.D.C. 1960 Supp. § 13.1727 in the Circuit Court of Pennington County, South Dakota on January 31, 1961. Thereafter, on the basis of this conviction and his prior criminal record, he was sentenced to forty years in the state penitentiary under the state habitual criminal statute. On appeal to the South Dakota Supreme Court, the conviction was reversed on the ground that certain expert testimony which went to prove appellant's intent to commit the crime was erroneously admitted. State v. Percy, 80 S.D. 1, 117 N.W.2d 99 (1962).

On February 8, 1963, appellant was charged with kidnapping in violation of S.D.C. 1960 Supp. § 13.2701. This charge was based on the same event or transaction as the reversed indecent molestation conviction. Appellant was found guilty by a jury of kidnapping and was sentenced by the court to life imprisonment. His conviction was affirmed on appeal to the South Dakota Supreme Court. 81 S.D. 519, 137 N.W. 2d 888 (1965). His subsequent petitions for state habeas corpus relief were denied in the state courts. 83 S.D. 257, 158 N.W.2d 241 (1968).

Two issues are presented on this appeal: 1) whether appellant's Fifth Amendment right not to be twice placed in jeopardy was violated by his retrial for kidnapping, and 2) whether appellant was denied Due Process as guaranteed by the Fourteenth Amendment because a harsher punishment was imposed on the kidnapping conviction than had been received on the reversed indecent molestation conviction. We consider each of these questions seriatim.

Prior to an examination of the merits of appellant's double jeopardy claim, we take cognizance that in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969) the Supreme Court held that the Fifth Amendment prohibition of double jeopardy applies to the states through the Fourteenth Amendment and that "the same constitutional standards apply against both the State and Federal Governments." Id. at 795, 89 S.Ct. at 2063. Since appellant's conviction was final prior to the decision in Benton, supra, his invocation of the protection of that decision is dependent upon the retrospectivity of the Supreme Court's ruling. However, because we find that appellant was not twice placed in jeopardy, it is unnecessary for us specifically to determine the retroactivity of Benton. Nevertheless, we note parenthetically that in a footnote to Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Court stated:

"There can be no doubt of the 'retroactivity' of the Court's decision in Benton v. Maryland. In North Carolina v. Pearce, 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656], decided the same day as Benton, the Court unanimously accorded fully 'retroactive' effect to the Benton doctrine."

Id. at 437, n. 1, 90 S.Ct. at 1191. Other Circuits considering the question have also given Benton retrospective application. Tipton v. Baker, 432 F.2d 245 (10th Cir. 1970); United States ex rel. Brown v. Hendrick, 431 F.2d 436 (3rd Cir. 1970); Mullreed v. Kropp, 425 F.2d 1095 (6th Cir. 1970).

The double jeopardy clause of the Fifth Amendment provides that no person shall " * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." However, it is well-established that no violation of the protection of the Double Jeopardy Clause occurs where a defendant is retried after his conviction is set aside on his request due to an error in the proceedings. United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966); United States v. Tateo, 377 U.S. 463, 465, 473–474, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Ball, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). See also, Price v. Georgia, 398 U.S. 323, 326–327, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); Houp v. Nebraska, 427 F.2d 254 (8th Cir. 1970).

Appellant does not claim that he was twice tried for the same offense, but presents a multi-pronged argument urging that his trial for kidnapping was based upon the same facts adduced at his previous trial for molestation and thus in violation of the double jeopardy provision, that kidnapping includes the offense of indecent molestation, and that under the rationale of Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L. Ed.2d 199 (1957) he did not, by successful appeal of the molestation conviction, waive the right not to be tried for kidnapping.

Indecent molestation is defined by S. D.C. 1960 Supp. § 13.1727:

"Any person who shall willfully and unlawfully commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of fifteen years, with the intent of arousing, appealing to, or gratifying the lust or passion or sexual desires of such person, or of such child, shall be guilty of the crime of indecent molestation."

The offense of kidnapping is defined in S.D.C. 1960 Supp. § 13.2701 as follows:

"Whoever shall seize, confine, inveigle, decoy, kidnap, abduct or carry away any person and hold or detain such person for ransom, reward, or otherwise, except in the case of an unmarried minor by a parent thereof, shall be guilty of kidnapping * * *."

In Blockburger v. United States, 284 U. S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court held:

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether *each* provision requires proof of a fact which the other does not."

Id. at 304, 52 S.Ct. at 182.

Clearly, South Dakota's kidnapping and indecent molestation statutes each require proof of facts which the other does not. And, contrary to appellant's contention, the evidence introduced at the two trials was not identical. At the first trial for indecent molestation, the state offered testimony of a supposed expert witness to prove that the act of molestation was committed with the intent specified in the statute. In reversing this conviction on appeal, the South Dakota Supreme Court found that this witness was not a qualified expert and that her testimony should have been stricken. The court held that in cases arising under the molestation statute "[t]he critical issues * * * are the nature of the act and the intent with which it was done," and that without the evidence which the court found to be inadmissible, there was not sufficient proof bearing on appellant's intent to sustain the conviction. State v. Percy, 80 S.D. 1, 117 N.W.2d 99, 101 (1962). At appellant's subsequent trial for kidnapping, this evidence was not introduced, and was, of course, not necessary to prove the offense of kidnapping.

Since the submission of this appeal, the Supreme Court has held that the double jeopardy clause of the Fifth Amendment, now applicable to the states, incorporates the rule of collateral estoppel. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The doctrine " * * * means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." Id. at 443, 90 S.Ct. at 1194. At his first trial, Ashe had been found not guilty of the armed robbery of one of a group of persons who had been victimized at the same time. The State then prosecuted him for armed robbery of another of the persons who had been robbed. Applying the rule of collateral estoppel, the Supreme Court held that the second prosecution was barred, because at both trials "[t]he single rationally conceivable issue in dispute before the jury was whether petitioner had been one of the robbers." Id. at 445, 90 S.Ct. at 1195. And, this issue had been finally resolved in petition-

er's favor by the jury's verdict of acquittal at the first trial.

■ For several reasons there is no basis for applying the doctrine of collateral estoppel to this case. Even though the evidence at both of appellant's trials was similar, the essence of the offense of indecent molestation, and the issue before the jury at the first trial, was whether appellant had willfully committed a lewd act upon the child with the intent of appealing to the lust of himself or his victim. The gravamen of the offense of kidnapping submitted to the jury at the second trial, was whether appellant had unlawfully seized and detained the child. Compare, United States ex rel. Brown v. Hendrick, supra, at 439. Furthermore, even if we were to assume that the essential elements of kidnapping were incidentally determined at the first trial, *Ashe* would not control because here, as distinguished from *Ashe,* the jury found appellant guilty. See United States v. DeMarrias, 441 F. 2d 1304 (8th Cir. 1971).

■ Secondly, appellant posits the theory that under the unique circumstances of this case, indecent molestation is included within the greater offense of kidnapping, and that his conviction on the lesser offense barred the state from prosecuting him for kidnapping. This theory is premised upon the contention that because the South Dakota statute defines kidnapping as the abduction and holding of a person for "ransom, reward or otherwise," it is necessary to prove that the victim was held for some benefit of the abductor. Appellant contends the benefit in his case must have been the indecent molestation, since no ransom or reward was involved. Granting the novelty of the theory, we find it untenable. Even assuming it essential to prove some benefit to the abductor from the kidnapping, it would not be necessary to establish all the elements of the crime of indecent molestation. This is demonstrated in the instant case by the inability of the state to prove the intent necessary to convict appellant of moles-

tation. See State v. Percy, supra at 103. Moreover, the South Dakota kidnapping statute has been construed in State v. Strauser, 75 S.D. 266, 63 N.W.2d 345 (1954) to the effect that:

> "[I]t is not necessary to allege that the kidnapping was for reward or ransom or for any other specific purpose * * * the word 'otherwise' extends the prohibition of the statute to restraint in any case other than for ransom or reward."

Id. at 347. Based on the state's interpretation of its own statute, then, it was unnecessary to prove that appellant had *any* purpose in perpetrating the abduction in order to support a conviction for kidnapping. Thus, we must reject appellant's theory that indecent molestation is an included offense of kidnapping.

Finally, appellant urges that under the holding of Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the state was barred from prosecuting him for kidnapping. At his first trial, Green was convicted of arson and second degree murder. The jury had also been authorized to find him guilty of first degree murder, but the verdict was silent on this charge. Green's second degree murder conviction was reversed on appeal, and he was subsequently retried and convicted of first degree murder. The Supreme Court reversed this second conviction on the ground that Green had been twice placed in jeopardy for the same offense. In so holding, the Court reasoned that the first jury's verdict on the second degree murder charge constituted an implicit acquittal on the first degree charge, and that Green's jeopardy on the greater offense was complete when the jury was given the opportunity to return a guilty verdict on that charge. The Supreme Court recently applied the *Green* rationale on nearly identical facts in Price v. Georgia, supra.

In the instant case, appellant was *not* charged with kidnapping at his first trial. There were no jury instructions on that offense, and the jury had no op-

portunity to render an explicit or implicit verdict on kidnapping. Thus, appellant cannot bring himself within the holdings of *Green* and *Price*, supra, simply because he was not placed in jeopardy on the kidnapping charge at his first trial.

In summary, we find that appellant's double jeopardy claim must fail. Indeed, his claim is analagous to that urged by the accused in United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966) and rejected by the Supreme Court. In Ewell, the defendant's first conviction for violating 26 U. S.C. § 4705(a), selling narcotics without the required order form, was vacated and defendants were subsequently reconvicted of violating 26 U.S.C. § 4704(a), selling narcotics not in the original stamped packages, an act arising out of the same transaction as the earlier conviction. In finding that the defendants had not been twice placed in jeopardy, the Court observed:

> "Here, the Government is not attempting to prosecute a defendant for an allegedly different offense in the face of an acquittal or an unreversed conviction for another offense arising out of the same transaction. * * * Here, the Government seeks only to sustain one charge under § 4704. If the present indictments charge the same offense for which appellees were previously convicted, they may clearly be retried on either § 4705 or § 4704 after their convictions have been vacated on their own motions. In these circumstances, where the appellees are subject to a second trial under Ball and Tateo, the fact that § 4704, rather than § 4705, is charged does not in any manner expand the number of trials that may be brought against

them. If the two offenses are not, however, the same, then the Double Jeopardy Clause by its own terms does not prevent the current prosecution under § 4704."

Id. at 124–125, 86 S.Ct. at 778.

Accordingly, we find that appellant's rights under the Double Jeopardy Clause were not violated by his retrial and reconviction for kidnapping.

■ Notwithstanding our disposition of the first issue, appellant urges that the South Dakota court violated his constitutional right to due process by imposing a greater sentence on the kidnapping conviction than he had received on the conviction for indecent molestation. Reliance is placed upon the Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), where the Court found that "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction" of a defendant successful in having his first conviction set aside. Id. at 723, 89 S.Ct. at 2079. The Court did hold, however, that under the Due Process Clause, where a more severe sentence is imposed after a new trial, the reasons therefor must be based upon indentifiable conduct of the defendant occurring after the original sentencing, and that these reasons must affirmatively appear on the record.

Application of the teachings of North Carolina v. Pearce, supra, to the instant case is necessarily premised upon the retrospectivity of that ruling, since appellant's conviction and sentence became final long before that decision was rendered. However, assuming, without deciding, that *Pearce* is retroactive,[1] we

---

1. We have withheld decision of this appeal for some time in the hope that the Supreme Court would rule on the retroactivity of the *Pearce* case. Pending the submission of this appeal, the Supreme Court thrice granted certiorari on this question, but in each case the writ was dismissed as improvidently granted.

Moon v. Maryland, 250 Md. 468, 243 A. 2d 564 (1968), cert. granted 395 U.S. 975, 89 S.Ct. 2135, 23 L.Ed.2d 764 (1969), petition for cert. dismissed 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970); Odom v. United States, 403 F.2d 45 (5th Cir. 1968), cert. granted 399 U.S. 904, 90 S.Ct. 2203, 26 L.Ed.2d 559, petition

find that holding not controlling in the instant case. The ruling in *Pearce* was predicated upon increased punishment imposed after retrial for the *same* offense. Appellant was given a harsher sentence upon his conviction of a different offense. Although, appellant's two convictions were based upon the same criminal episode or transaction as shown above, indecent molestation and kidnapping are separate and distinct offenses, with different punishments provided for each under the South Dakota statutes.

We do not interpret the decision in North Carolina v. Pearce, supra, to apply to another offense arising out of the same transaction. And, we are unwilling, as an inferior appellate court, to broaden the sanctions thus far enunciated by a majority of the Supreme Court.

Rather, we believe the holding in Williams v. Oklahoma, 358 U.S. 576, 79 S. Ct. 421, 3 L.Ed.2d 516 (1959) controls. In *Williams*, the defendant first pled guilty to murder and received a life sentence. Thereafter, he pled guilty to, and received the death penalty for the offense of kidnapping, which was based on the same event as the murder. In rejecting the defendant's attack upon the imposition of the death sentence, the Court held:

> "Therefore we cannot say that the sentence to death for the kidnapping, which was within the range of punishments authorized for that crime by the law of the State, denied to petitioner due process of law or any other constitutional right. Nor, in view of the fact that kidnapping and murder are separate and independent offenses in Oklahoma, is there any merit in petitioner's collateral claim that what he calls 'the lesser crime' of kidnapping 'merged' in what he calls 'the greater crime' of murder and that the sen-

tence to life imprisonment for the murder was a bar to imposition of any sentence for the kidnapping, or at least to any greater sentence than was imposed for the murder, and that imposition of a death sentence for the kidnapping deprived him of due process in violation of the Fourteenth Amendment."

Id. at 586–587, 79 S.Ct. at 427.

In summary, we find that appellant's right under the Fifth Amendment not to be twice placed in jeopardy has not been violated, and that he was not denied due process by imposition of a greater sentence upon his conviction for kidnapping.

Accordingly, the judgment of the district court should be and is affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. I believe that the double jeopardy provision of the Fifth Amendment and the due process clause of the Fourteenth Amendment barred South Dakota from prosecuting Percy for kidnapping.

It has long been the rule that a defendant, who obtains a reversal of a prior, unsatisfied conviction, can be retried in the normal course of events for the same offense. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). A defendant can ordinarily also be retried on a closely related but lesser charge for the same offense. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1965). But in my view, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1957); and Green v. United States, 355

for cert. dismissed 400 U.S. 23, 91 S.Ct. 112, 27 L.Ed.2d 122 (1970); Romontio v. United States, 400 F.2d 618 (10th Cir. 1968), cert. granted 400 U.S. 901, 91 S.Ct. 144, 27 L.Ed.2d 137 (1970), petition for cert. dismissed, 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644 (1971).

However, because we find North Carolina v. Pearce not controlling in our decision of this appeal, we have determined to proceed with the disposition of this matter, despite the unsettled question on the retrospectivity of that holding.

U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), bar a second prosecution on a greater charge growing out of a single criminal act or occurrence. I recognize that this view is contrary to that expressed in Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), and Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L. Ed. 306 (1932), but I believe those cases to be of doubtful validity in the light of *Ashe*.

To reach this result, one must assume that at least two Justices will join in the concurring views of Justices Brennan, Douglas and Marshall in *Ashe*. I believe this assumption to be valid under the circumstances of this case. Here, there was but one victim of the defendant's conduct. The prosecution was aware, before the first trial, of all material facts presented in either trial. It tried both cases on the same theory, i. e., that the defendant had sexually assaulted a young boy, and it presented substantially the same evidence in both trials. Finally, in both trials, the court instructed the jury and sentenced the defendant on the basis that a sexual assault was the gravamen of each offense. No valid reason has been demonstrated why the prosecution should not have been required to join, in the initial proceeding, all charges growing out of his single criminal act which it intended to bring against this defendant. Having failed to do so, the State is barred from trying him a second time for another and a greater offense.

It is, of course, clear that the defendant could have been retried on the child-molestation charge without offense to the Fifth Amendment. But to permit him to be retried for another, greater offense growing out of the same criminal act would encourage vexatious multiple prosecutions and discourage legitimate appeals.

I must also dissent from the majority's holding that North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is inapplicable here. The sentence imposed after the second trial was harsher on two scores: no credit was given for time served under the first sentence, and the sentence was for life rather than forty years. Furthermore, no justification was shown for the imposition of the harsher sentence. It seems clear that the State of South Dakota is punishing the defendant for having exercised his post conviction right of review.

For the reasons stated earlier in this dissent, I feel no reluctance to extend *Pearce* to situations where a defendant is retried for another offense arising out of the same transaction, particularly where the circumstances are similar to those here. The underlying rationale of *Pearce* is that due process requires that a defendant be freed of apprehension of incurring a heavier sentence if he successfully appeals a conviction. This fear cannot be relieved if the ban against heavier sentences can be avoided by prosecution for another offense arising out of the same transaction the second time around.

One further point is necessary to this dissent. The defendant was held for approximately three years before receiving the life sentence. He was given no psychiatric treatment during this period even though his record indicated the necessity for such treatment, and South Dakota law appears to have required it after the first sentence. See, S.D.C. 1960 Supp. § 13.1727.[1]

---

1. "*13.1727 Indecent molestation of minor; felony; penalty; mental treatment.*
 * * *
 \*   \*   \*   \*   \*
 "It shall be the duty of the trial judge immediately after passing sentence, to order such person to be mentally examined at the South Dakota State Hospi-

tal to ascertain if mental treatment is necessary during such period of confinement. * * * If, after such examination, the Superintendent of the South Dakota State Hospital finds such person to be mentally ill, and amenable, from the standpoint of his reasonably safe incarceration, to hospitalization, he shall

Prior to the second trial, a court-appointed psychiatrist filed a lengthy report with the court. This report summarized the defendant's sexual problems and offenses and recommended:

"  *   *   * There is no doubt in my mind that the subject is ill in terms of his psychological make-up, that he is psychiatrically the victim of a life-long pattern best called a neurotic character, expressing itself mostly in fixation at the infantile level of psycho-sexual development; immaturity, impulsivity, poor judgment, poor social adjustment. His life shows the usual pattern of a difficult child, overcomes drink.

"Generally speaking, he is able to differentiate between right and wrong and thus there is no question in insanity in the legal sense. He is able to stand trial and to understand the proceedings as well as sentencing.

"Still, recent developments in the field of legal psychiatry are pointing in the direction of professional care for individuals such as the present subject. It would seem to be desirable that this man whose behavior has been pathological in nature be placed in a situation where he could get appropriate treatment for his condition. Unfortunately, our state does not have such facilities for treatment and rehabilitation at the penitentiary. I would like to suggest that in any event the possibility of having this man sent to the State Hospital in Yankton for long-term treatment, including psychotherapy in its various forms and rehabilitation measures in all their diversities

be used to give this man a chance of being well adjusted citizen. Possibly, this does not sound like a very practical recommendation; lack of staff at State Hospital, overcrowded and other such factors may preclude the patient ever receiving the treatment that would lead to his improvement and eventual recovery. Still, I feel it is my duty to point out that this man is basically ill and that if he is under consideration for punishment he should also be under consideration for treatment and rehabilitation."

These recommendations were ignored when the second sentence was imposed.

It is possible that Steven Lux, his parents and the defendant might have been spared this ordeal had one of the many courts, with whom the defendant came in contact before this incident, made arrangements for appropriate medical treatment. But they failed to do so, and society is the loser.

It is my view that the sentence in this case is not only violative of South Dakota law but also approaches the boundary of the constitutional protections afforded by the Eighth Amendment. Thus, the present sentence should be vacated and this matter remanded to the State of South Dakota with instructions to it to provide proper treatment for the defendant. Unless we are prepared to take such action, our society will continue to pay a heavy price for its failure to give proper treatment where needed. See, Model Penal Code Sentencing Provisions, § 6.13, American Law Institute, Model Penal Code (P.O.D.1962); Approved Draft, 1968, Sentencing Alternatives and Procedures, §§ 2.5, 2.6.

be hospitalized at the South Dakota State Hospital for so long as the Superintendent deems such treatment to be of

medical value to such prisoner. *   *   * "
S.D.C.1960 Supp.